IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                 No. 2:21-cr-0878 KG

JOHN BENJAMIN THORNTON,

      Defendant.

## DEFENDANT'S MOTION TO SUPPRESS

COMES NOW the Defendant, John Benjamin Thornton, by and through his attorney, Assistant Federal Public Defender Bernadette Sedillo, and respectfully moves this Court for an Order suppressing statements and evidence obtained during a custodial interrogation on May 24, 2021, in Las Cruces, New Mexico. This motion is based on the Fourth and Fifth Amendments to the United States Constitution and Rules 12(b) and 41(h) of the Federal Rules of Criminal Procedure.

### I. Introduction

Mr. Thornton is a combat veteran of the Iraq war. He has been diagnosed with post-traumatic stress disorder. The Veterans Administration has determined Mr. Thornton has a 50 percent to 100 percent service-connected disability. Mr. Thornton receives Veterans Administration Disability Compensation and Social Security Disability Insurance benefits.

On September 14, 2021, the government filed a superseding indictment charging Mr. Thornton with cyberstalking, in violation of 18 U.S.C. §§ 2261A(2)(B) and 2261(b), and transmitting threatening communications, in violation of 18 U.S.C. § 875(c). (Doc. 43.) The cyberstalking charge is based on alleged electronic messages Mr. Thornton allegedly sent "that

caused, attempted to cause, and would be reasonably expected to cause, substantial emotional distress to T.T, the former spouse of the defendant." (Doc. 43.) The threating communications charge is based on alleged electronic messages containing threats that Mr. Thornton allegedly sent to T.T., and Mr. Thornton's father, R.T., and E.L. (Doc. 43.)

The Court is familiar with the nature of the messages, but as an example, Mr. Thornton is alleged to have stated, "I'm killing them for Superconductive Quantum Tunneling into the Brainwaves of Methamphetamine users, globally. mk ultra, b it's Methamphetamine Kinetics Superconducted." (Doc. 1.) Based on subscriber information linked to the messages, the government obtained a search warrant to review records regarding the location of Mr. Thornton's cellular telephone and obtained his driver's license photograph to ascertain that he was depicted in photos associated with the text messages. (Doc. 1.) FBI agents conducted surveillance of Mr. Thornton's home and arrested him. (Doc. 1.) When Mr. Thornton was arrested, FBI agents conducted an interrogation. (Doc. 1.) During the interrogation, Mr. Thornton admitted to sending the messages and explained his purpose in sending the messages was to expose a terrorist organization that utilizes the brainwaves of methamphetamine users. (Doc. 1.)

On May 24, 2021, the day of his arrest, FBI agents questioned Mr. Thornton while he was in custody. After Mr. Thornton received *Miranda* warnings, he invoked his right to remain silent by stating "I'm already done with this FBI bullshit." At this point, the agents should have immediately ended questioning. Instead, the agents continued to interrogate Mr. Thornton, encouraged him to elaborate on his theories, persuaded him to make incriminating statements, and convinced him to sign a consent form to search his phone. The agents' conduct, in failing to cease questioning after Mr. Thornton unequivocally invoked his right to remain silent and their efforts to obtain purported consent to search the phone, violated Mr. Thornton's Fourth and Fifth

Amendment rights. As a result, his statements and all evidence derived from the search of his phone must be suppressed.

## II.     Argument

The Fifth Amendment to the United Governments Constitution guards individuals from being compelled to incriminate themselves. *See* United States Const. amend. V. The Fifth Amendment privilege against self-incrimination includes the requirement that a defendant be made aware of the right to remain silent and to an attorney before police interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). The government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444.

### A.     Statements made after Mr. Thornton invoked his rights must be suppressed

A person in custody has a right to remain silent, which is the "right to cut off questioning." *United States v. Cody*, 114 F.3d 772, 775 (8th Cir. 1997). When a suspect invokes his right to silence, law enforcement must end the interrogation. *Miranda*, 384 U.S. at 473–74 ("If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."). Interrogating officers must "scrupulously honor" a suspect's invocation of the right to silence. *See Cody*, 114 F.3d at 775 (citing *Michigan v. Mosley*, 423 U.S. 96, 102–104 (1975)). Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980).

Once the right to remain silent is invoked:

> [T]he Police must immediately cease questioning, allow a "significant amount of time" to pass before questioning begins again, re-advise the detainee of [his] Miranda rights, and limit the ensuing interrogation to questions regarding a separate crime not the subject of the first questioning session.

*Cody*, 114 F.3d at 775 (citing *Mosely*, 423 U.S. at 104; *see also United States v. House*, 939 F.2d 659, 662 (8th Cir. 1991) ("The [Mosely] Court relied on three factors in determining that continued questioning after an initial refusal to answer questions was appropriate: (1) there was an immediate cessation of questioning upon defendant's request; (2) a 'significant amount of time' had passed since the last session and a new set of warnings was given; and (3) the second interrogation involved inquiries concerning a separate crime.")

Mr. Thornton was advised of his *Miranda* rights during questioning on May 24, 2021. Thereafter, he unequivocally invoked his right to remain silent by asking to talk to the U.S. Attorney and when he was told that wouldn't happen today, he unequivocally stated, "Okay so I'm just gonna wait for the U.S. Attorney then cause I'm already done with this FBI bullshit." "So you can remain silent as well. I'll talk to the U.S.Attorney. I'm done."…"Just take me wherever you're gonna take me." Even after Mr. Thorton had unequivocally invoked his right to remain silent, the agents asked him if he would mind if they looked through his cell phone. Mr. Thorton unequivocally denied consent. "Actually I'll wait for the U.S.Attorney. Yeah, I will be a dick about it."…"I have to go to jail, so yeah fuck you." "You're not gonna investigate actual terrorism which is the reason for all of this, so you guys can fuck off on my phone too."…"If you guys are gonna charge me, then fuck off, charge me. "I'm done."

In *Adams*, the court concluded that when the defendant stated he was "done talking" that statement unequivocally invoked his Fifth Amendment right to remain silent:

> It is also clear to the Court that when [defendant] unequivocally states that he was "done talking," he invoked his Fifth Amendment

4

> right to remain silent. At that point, [the Government] should have immediately ended the interview. However, rather than honoring [defendant's] invocation of his right to remain silent, [the Government] continued interrogating him. This violated [defendant's] rights under the Fifth Amendment.

*United States v. Adams*, 2016 WL 385965, at *3 (D. Minn. Jan. 7, 2016).

Other courts have come to the same conclusion. *See Jones v. Harrington*, 829 F.3d 1128, 1141 (9th Cir. 2016) (holding that statement "I don't want to talk no more" was unambiguous invocation of right to remain silent); *Flores v. Muniz*, 2018 WL 1806184, at *10 (E.D. Cal. Apr. 17, 2018) (statement "I'm done talking" represents a "clear, unambiguous, and unequivocal invocation of the right to remain silent."); *United States v. Heine*, 2016 WL 6808595, at *23 (D. Or., Nov. 17, 2016) (holding that statement "I really don't want to talk anymore" was unambiguous invocation of right to remain silent).

### B. The agents violated Mr. Thornton's rights by continuing questioning

After Mr. Thornton invoked his right to remain silent, the agents were required to cease questioning and allow significant time to pass before they resumed questioning. *See Cody*, 114 F.3d at 775. Instead, the agents continued the interrogation and talked Mr. Thornton into signing a consent form: The agents' insistence that Mr. Thornton continue to talk immediately after he invoked his right to remain silent fails all three prongs of the *Mosely* test: (1) there was not an immediate cessation of questioning upon Mr. Thornton's request to end the interrogation; (2) a 'significant amount of time' did not pass between the attempted interrogation of Mr. Thornton and a new set of *Miranda* warnings; and (3) the second (in this case, the continued) interrogation involved inquiries concerning the same and not a separate crime. *See e.g., House*, 939 F.2d at 662.

In *United States v. Teemer*, the court concluded the defendant invoked his right to remain silent by stating "I'm not gonna say anything after that, because that would violate my rights." *Id.*, 260 F. Supp. 2d 187, 196 (D. Me. 2003). Instead of ending the questioning, the officer responded

5

by attempting to persuade the defendant to talk and tell his side of the story. *Id.* The court concluded that the officer's attempts at persuasion violated the defendant's Fifth Amendment right to remain silent:

> Officer Teceno should have ceased his questioning of Defendant. However, despite Defendant's clear statement that he did not wish to answer any questions at that point, Officer Teceno responded by immediately seeking to persuade Defendant that indeed he should talk. He emphasized for Defendant that besides his right to remain silent, he also had a right to tell his side of the story and that, if he did not, they had only the story of his co-defendant and the other police officers… Far from scrupulously honoring Defendant's assertion that he did not wish to answer his questions, Officer Teceno engaged in tactics, in a custodial setting, designed to convince Defendant to waive the right he had already invoked. Such efforts on the part of the officer resulted in a violation of Defendant's Fifth Amendment rights under *Miranda*, and any statements made after Defendant's invocation of this privilege will be suppressed.

*Id.* at 196–97 (emphasis in original); *see also United States v. Sippola*, 2010 WL 2720780, at *7 (W.D. Mich. Jun. 24, 2010) (granting suppression of statement where "[i]mmediately after asserting his *Miranda* rights, [defendant] was turned over to custody of FBI Special Agent Johnston, who instead of honoring [defendant's] assertion of rights took steps to convince [defendant] that he should waive those rights."); *compare with United States v. DeMarce*, 564 F.3d 989, 994 (8th Cir. 2009) (affirming denial of suppression motion where agents immediately ceased questioning after suspect invoked right to remain silent and "did not attempt to persuade [him] to reconsider or to resume the interrogation") (internal quotation omitted).

When faced with Mr. Thornton's unequivocal statement, "I'm done…."Just take me wherever you're gonna take me", the agents responded with efforts to convince Mr. Thornton to talk and sign a consent form. Doing so violated *Miranda*. Because the agents failed to "scrupulously honor" Mr. Thornton's invocation of his right to remain silent and, as such, any

6

subsequent statement must be excluded as a violation of Mr. Thornton's right to remain silent. *See Adams*, 2016 WL 385965, at *4 (concluding that, based on violation of Fifth Amendment right to remain silent, "[t]he nine minutes of the interview that followed after [defendant's] invocation of his right to remain silent must be suppressed.").

### C. The alleged consent to search the phone violated *Miranda*

The purpose of the *Miranda* warning is to inform an individual in custody that he may refuse further interrogation. Notably, "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. at 301. A request for consent to search is the "functional equivalent" of express questioning under *Rhode Island v. Innis*. Such interrogation cannot occur after a person has invoked the right to counsel. *Miranda*, 384 U.S. at 436. After Mr. Thornton invoked his right to remain silent, the agents continued to interrogate him and convinced him to sign a consent form to allow agents to search his phone. Having invoked his rights, Mr. Thornton was entitled to remain silent and receive legal advice as to his rights and about the consequences of his consent to the search. In this sense, Mr. Thornton's Fourth Amendment rights were encompassed by the *Miranda* warning. Furthermore, Mr. Thornton had a right to be free from coercion to provide the police with any evidence which would tend to incriminate him.

### D. The alleged consent to search the phone was involuntary

The agents continued to interrogate Mr. Thornton after he invoked his *Miranda* rights. When a defendant talks to agents after being advised of his right to remain silent, the government bears the burden of proving by a preponderance of the evidence that the waiver of the right was voluntary. *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986). The question whether an individual waived his rights "is not one of form, but rather whether the defendant in fact knowingly

and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

For post-*Miranda* statements to be admissible at trial, the government has the burden of proving that the waiver of *Miranda* rights was knowing and voluntary. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Edwards v. Arizona*, 451 U.S. 477, 483 (1981); *Miranda*, 384 U.S. at 475. This is a heavy burden because courts must indulge every reasonable presumption against waiver of fundamental constitutional rights. *See Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

The relevant factors are: "(1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to physical punishment." *United States v. Lopez*, 437 F.3d 1059, 1063–64 (10th Cir. 2006) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). The question is whether the defendant's "will has been overborne and his capacity for self-determination critically impaired." *Schneckloth*, 412 U.S. at 225–26. The Tenth Circuit has specifically found that only if the totality of the circumstances surrounding the interrogation shows both an uncoerced choice and the requisite level of comprehension, can a waiver be effective. *See Sharp v. Rohling*, 793 F.3d 1216, 1233 (10th Cir. 2015); *United States v. Hernandez*, 93 F.3d 1493, 1501 (10th Cir. 1996).

In *Hart v. Attorney Gen. of the State of Fla.*, 323 F.3d 884 (11th Cir. 2003), the Eleventh Circuit found that, although the defendant has been read her rights under *Miranda*, and also signed a *Miranda* waiver form, the defendant's decision to waive her rights and confess was not voluntary, knowing and intelligent. In *Hart*, the court found that the defendant's decision was the product of a law enforcement officer's deception and that statements made by the law enforcement officer was contradictory to the *Miranda* warning. *See Hart*, 323 F.3d at 894–895.

In this case, the FBI agents employed coercive tactics to compel Mr. Thornton to talk and sign the consent form. They encouraged Mr. Thornton to ramble on and elaborate on his unusual theories. The agents took advantage of Mr. Thornton's mental health issues and belief in conspiracy theories. In total, the circumstances indicate that Mr. Thornton did not have a full awareness of the nature of his rights and the consequences of his decision. The circumstances also indicate that his statements and the consent to search the phone were not voluntarily made and Mr. Thornton did not understand that the FBI agents were coercing him and taking advantage of his weaknesses. As a result, Mr. Thornton's statements and all evidence obtained from his phone must be suppressed.

### E. The warrantless search of the phone violated the Fourth Amendment

In order for the government to show the purported consent to search the phone was not the product of an illegal interrogation it must proffer evidence that "establish[es] a break in the causal connection between the illegality and the evidence thereby obtained' so the consent is sufficiently removed to be an act of free will." *United States v. Sandoval*, 29 F.3d 537, 543 (10th Cir. 1994). In determining whether, under the totality of the circumstance, a consent to search was given freely and voluntarily, three factors are accorded special weight: (1) the temporal proximity of the seizure and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Sandoval*, 29 F.3d at 543 (*citing Brown v. Illinois*, 422 U.S. 590, 603 (1975)). The government cannot meet its burden to prove that Mr. Thornton's purported consent to search the phone was obtained without exploitation of the *Miranda* violation. Instead, after Mr. Thornton invoked his right to remain silent, agents convinced him to sign a consent form allowing agents to search his phone. These actions followed one after the other with no break in the casual chain. Mr. Thornton submits that this entire course of conduct was knowingly and intentionally designed to extract information from him and obtain his consent to search the phone under

circumstances where officers could not otherwise develop probable cause. The agents took advantage of Mr. Thornton. Because there was an unbroken, casual connection between the constitutional violations and the ensuing consent, there is nothing to remove the taint of the primary illegality and Mr. Thornton's consent to search of the phone is invalid.

**III.     Conclusion**

The statements and evidence from the phone were obtained in violation of the Fourth and Fifth Amendments and must be suppressed.

Mr. Thornton respectfully requests an evidentiary hearing on this motion.

In connection with the requested evidentiary hearing and if the government does not otherwise disclose the information, Mr. Thornton further requests, pursuant to Rule 26.2 of the Federal Rules of Criminal Procedure, that the government disclose to defense counsel at least forty-eight hours before the hearing any statements, including grand jury testimony, of suppression hearing witnesses. This request is made to avoid delays in the conduct of the hearing, which necessarily will be longer if counsel has to seek recesses to review materials provided by the government at the hearing. Mr. Thornton expressly reserves the right to raise any other motions and arguments based on the facts and evidence that may arise during any evidentiary hearings in this case.

The government opposes this motion.

WHEREFORE, Mr. Thornton requests that the Court set this matter for evidentiary hearing and enter an order granting Mr. Thornton's Motion to Suppress and providing for such other and further relief as the Court deems just and proper.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
506 S. Main Street, Suite 400
Las Cruces, New Mexico 88001
(575) 527-6930

*/s/ Bernadette Sedillo*
BERNADETTE SEDILLO
Assistant Federal Public Defender