IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| vs. | ) ) | CRIMINAL NO. 21-CR-0878 KG |
| **JOHN BENJAMIN THORNTON**, | ) ) ) |  |
| Defendant. | ) |  |

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

The United States hereby responds to Defendant John Benjamin Thornton's Motion to Dismiss, filed on October 6, 2021. Doc. 61. Thornton raises three grounds for dismissal in his motion: 1) Section 2261A(2) is unconstitutionally vague; 2) the superseding indictment omits his alleged course of conduct; and 3) the superseding indictment fails to state a Section 875(c) offense. *Id.* Thornton's arguments are without merit, and the United States respectfully requests that the Court deny his motion to dismiss without a hearing.

### BACKGROUND

On September 14, 2021, the grand jury returned a superseding indictment against Thornton. Count 1 charges Thornton with cyberstalking his former spouse, in violation of 18 U.S.C. § 2261(A)(2), and the remaining eight counts charge Thornton with making threats in interstate commerce, in violation of 18 U.S.C. § 875(c). Doc. 43. The charges stem from Thornton's troubling conduct aimed at three primary individuals: his ex-wife, T.T., his father, R.T., and the co-founder and chief scientist of a company called D-Wave Systems Inc., E.L.

I.  *Conduct Aimed at T.T.*

Thornton and T.T. were married from approximately 2007 until 2012. According to T.T., the divorce was amicable, as was her contact with Thornton following the divorce. Indeed, Thornton and T.T. have three young children together. However, in 2016 things began to change and Thornton became more absent and began exhibiting erratic and concerning behavior to T.T.

In 2021, Thornton began posting troubling messages on the social media website Facebook about T.T., and also began sending her disturbing text messages. Specifically, between February 4, 2021, and May 23, 2021, Thornton made posts on Facebook alleging he was going to "beat the fucking shit out of [T.T.]," he was going to "give her a beating in front of [his] kids in Katy, Texas," he was going to "ACTUALLY earn a domestic violence conviction on the day [he] blast [T.T.] with a STRAIGHT RIGHT," and, he was going to "blow HER FUCKING HEAD OFF!!" Between February 4, 2021, and May 23, 2021, Thornton also posted on Facebook, *inter alia*, that T.T. is a "drug whore," that she "should put a gun in her mouth and pull the trigger," that she is a "JUNKIE BITCH," that she is "a heroin addict," that she "is responsible for 2 heroin deaths in her family."

Additionally, on May 18, 2021, Thornton sent T.T. a text with a selfie followed by this message: "I hope this is still your number. This is being tattooed on my neck. Then we are going to take the hells angels and shotgun everyone at D-WAVE." Thornton then sent a picture of two unidentified individuals stating: "They work for me now. Tell my concern their father is The revolutionary war general. 5 stars now. 5 stars after I execute Joe Biden for Treason. I'm killing them for Superconductive Quantum Tunneling into the Brainwaves of Methamphetamine users, globally. mk ultra,b it's Methamphetamine Kinetics Superconducted. You're a traitor. I'm going to execute you for Treason as well. You should be scared."

## II. Conduct Aimed at E.L.

Thornton is obsessed with a company called D-Wave Systems Inc., which develops quantum computing systems, software, and services. Thornton believes the company is a terrorist organization that tunnels information into the brainwaves of methamphetamine users in an effort to manipulate them. He believes this is done using a "SQUID" technique, which stands for superconducting quantum interference device. E.L., is the co-founder of D-Wave and Thornton has made numerous threats to kill E.L. both on Facebook and through e-mails sent directly to D-Wave.

Specifically, on February 16, 2021, Thornton posted on Facebook that those suffering from methamphetamine psychosis, "HAVE TO FIGHT," and "KILL THEM." In the same post he went on to say, "WE GET TO KILL THEM," "[E.L.] must be taken alive . . . I'm coming to get [E.] I'll do it with a box cutter just to send a message to George Bush that he's next, once it starts." Thornton ended his post by stating, "I will execute thousands and the people of the world WILL CHEER IT!" On April 10, 2021, Thornton posted on Facebook, "I AM GOING TO KILL [E.L.] with THIS GOLDEN GUN. So, cum to me on your knees. It's the strongest point that can be made." On May 12, 2021, Thornton sent two e-mails to "inquiry@dwavesys.com" which is the publicly listed e-mail account for D-Wave. The first e-mail read: "Yes! I'm going kill all of you. [E.L.] is getting his throat slit for me. I'm exciting about the future. Of being Joker." The second e-mail read: "[E.L.] is getting his throat slit by Hamas for me. You guys don't have an iron dome, so they're going to blow your heads off pretty easily. I can't until you're all dead."

## III. Conduct Aimed at R.T.

R.T. last had direct communication with Thornton approximately two or three years ago. On May 18, 2021, Thornton sent R.T. a text with a selfie followed by this message: "This is being

tattooed on my neck. Then we are taking the Hells Angel's to d-wave quantum computer company and shotgun execute every single one of them for running MK ULTRA . . . it's Methamphetamine Kinetics Superconducted. Then I'm going to execute you for Treason as well. I'm going to kill you for standing in my way." Thornton then sent a picture of two unidentified individuals followed by this message: "They work for me. Unless he wants to repent. You are so stupid. IAM a professional biomedical equipment specialist that worked on the staff that built the neurological Research institute at Texas Children's Hospital in Houston. it's most advanced in the world. That's my resume. Yes says. You're FUCKING DEAD [R.] We already voted. Love your last days If Kathy didn't intervene on my children like you did. She will be spared."

## ARGUMENT

I. *Thornton's vagueness argument is meritless.*

Title 18 U.S.C. § 2261A(2)(B), in relevant part, states:

> Whoever—with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communications system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that—causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person…shall be punished….

Thornton alleges that Count 1 of the superseding indictment—which charges a violation of § 2261A(2)(B)—is unconstitutionally vague. Doc. 61. Thornton makes this claim, alleging it is "difficult to understand what is covered by Section 2261A(2)'s prohibition on courses of conduct that attempt to cause emotional distress and the statute fails to give the requisite fair warning." Doc. 61 at 2. Thornton also alleges that "[w]ithout any standard for determining what conduct is lawful and what conduct is proscribed, § 2261A(2) is susceptible to arbitrary

enforcement." Doc. 61 at 4. As will be explained below, Thornton's claims are meritless and this Court should reject them.

To begin, "[a] statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *United States v. Rodebaugh*, 798 F.3d 1281, 1295 (10th Cir. 2015) (quotations and citations omitted). Contrary to Thornton's assertions, § 2261A(2)(B) does not suffer from either defect.

First, § 2261A(2)(B) clearly puts the public on notice regarding what type of conduct is prohibited: "whoever—with the intent to kill, injure, harass, [or] intimidate," uses a facility of interstate commerce, "to engage in a course of conduct that . . . causes . . . substantial emotional distress to [the harassee]," is in violation of the law. 18 U.S.C. § 2261A(2)(B). Additionally, 18 U.S.C. § 2266(2) defines "course of conduct" to mean: "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." Thus, the statute "set[s] out [what is prohibited] in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 579 (1973). Indeed, in evaluating § 2261A(2)(B), the Fourth Circuit has specifically held that "a common sense reading of the statute adequately defines the prohibited conduct." *United States v. Shrader*, 675 F.3d 300, 310 (4th Cir. 2012).

Despite this, in an effort to confuse the issues, Thornton alleges the language *in the superseding indictment* is unclear with respect to the proper intent requirement because it could be read to impose a requirement that Thornton intended to cause substantial emotional distress, even though the statute contains a seperate intent requirement that the defendant act with the

5

intent to kill, injure, harass, or intimidate. Doc. 61 at 4. To be clear, a vagueness challenge is directed to the statute itself, *not* the indictment before the Court. Accordingly, it is difficult to discern what Thornton's actual claim is. If Thornton is alleging that the statute is vague because it is unclear whether a defendant must possess the requisite intent to engage in a course of conduct, or a requisite intent to cause substantial emotional distress, he should simply look to the text itself to resolve this confusion. *See Holloway v. United States*, 526 U.S. 1, 6, 119 S. Ct. 966, 969, 143 L. Ed. 2d 1 (1999) ("[T]he language of the statutes that Congress enacts provides the most reliable evidence of its intent." (quotation and citation omitted).

     Here, the statute's intent component clearly modifies the act of engaging in a course of conduct, not the resultant harm of causing emotional distress. This is clear for two primary reasons. First, the intent element is contained in a completely different subsection than the resultant harm element.[1] Thus, there is no basis for reading the intent element to modify the resultant harm element. *See generally Russello v. United States*, 464 U.S. 16 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)). Second, Congresses' use of the passive voice for the subsection that contains the resultant harm element indicates that subsection does not require proof of intent. *Dean v. United States*, 556 U.S. 568, 572 (2009) ("The passive voice focuses on an event that occurs without respect to a specific actor, and therefore without respect to any actor's intent or culpability."). Accordingly, any vagueness challenge on that ground should fail.

---

[1] The intent element is contained in subsection (2) of the statute while the resultant emotional distress element is contained in subsection (B). *See* 18 U.S.C. § 2261A(2)(B).

6

Thornton also makes a cursory reference to the First Amendment claiming that because § 2261A(2) criminalizes speech, "the void-for-vagueness doctrine 'demands a greater degree of specificity than in other contexts.'" Doc. 61 at 3 (citation omitted). Again, it is difficult to decipher what Thornton's actual claim is. If he means to argue that § 2261A(2)(B) is overbroad because speech can be regulated under the statute, his claim should likewise fail.

"Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003). Accordingly, the Court should first discern § 2261A(2)(B)'s aim. *See United States v. Williams*, 553 U.S. 285, 293 (2008) ("The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers."). In order to do so, the Court should examine the elements of the statute.

In order to convict someone under § 2261A(2)(B), the government must prove that: (1) the defendant had a specific intent to kill, injure, harass, or intimidate; (2) the defendant engaged in a course of conduct; (3) the defendant used a facility of interstate commerce; and (4) the defendant's "course of conduct"[2] caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress. *See id*. Thus, the statute makes clear that it regulates "course[s] of conduct," not speech. *United States v. Ackell*, 907 F.3d 67, 73 (1st Cir. 2018) ("By its own terms, § 2261A(2)(B) regulates not speech, but conduct—or, to be precise, courses of conduct." (quotations omitted)); *United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012)

---

[2] As previously noted, a "course of conduct" is "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2).

("Section 2261A(2)(B) is directed toward *courses of conduct*, not speech, and the conduct it proscribes is not necessarily associated with speech." (quotations omitted) (emphasis added)).

In any event, *even if* some speech is implicated to satisfy the courses of conduct element, the fact that the statute requires that the offender act with a specific intent to "kill, injure, harass, [or] intimidate," 18 U.S.C. § 2261A(2)(B), means that most, if not all, of the "statute's legal applications are to conduct that is not protected by the First Amendment." *United States v. Bowker*, 372 F.3d 365, 379 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1182 (2005); *see also Petrovic*, 701 F.3d at 856 ("Because the statute requires both malicious intent on the part of the defendant and substantial harm to the victim, it is difficult to imagine what constitutionally-protected speech would fall under these statutory prohibitions." (quotations and citations omitted)).

Indeed, it is well-settled that "true threats"—which the Supreme Court has defined as "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals"[3]—are not protected by the First Amendment. *E.g., R.A.V. v. St. Paul*, 505 U.S. 377, 388 (1992) ("[T]hreats of violence are outside the First Amendment."). And while the statute does not require that the regulated speech constitute a true threat, a substantial amount of the statute's applications that involve speech will include threats and other expressions of violence that do not implicate the First Amendment. *Petrovic*, 701 F.3d at 856 ("Because a substantial number of the statute's applications will not be unconstitutional, we decline to use the "strong medicine" of overbreadth to invalidate the entire statute." (quotations and citation omitted)). Thus, simply because a defendant could conceive of scenarios in which § 2261A(2)(B) *might* cover protected conduct,

---

[3] *Virginia v. Black*, 538 U.S. 343, 359 (2003).

that does not render the statute unconstitutional. *See Parker v. Levy*, 417 U. S. 733, 760 (1974) ("[E]ven if there are marginal applications in which a statute would infringe on First Amendment values, facial invalidation is inappropriate if the remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct." (quotation and citations omitted)); *Ackell*, 907 F.3d at 77 ("Ultimately—while acknowledging that § 2261A(2)(B) could have an unconstitutional application, and remaining cognizant of the chilling-effect-related concerns inherent in declining to invalidate a statute that can be applied to violate the First Amendment—we are unconvinced that we must administer the "strong medicine" of holding the statute facially overbroad" (citation omitted)).

Finally, though the Tenth Circuit has not addressed an overbreadth attack to § 2261A(2)(B), every circuit to consider similar assaults have summarily rejected challenges to § 2261A(2)(B). *E.g.*, *Ackell*, 907 F.3d at 77 (1st Cir. 2018) (holding that § 2261A(2)(B) does not, on its face, regulate protected speech, or conduct that is necessarily intertwined with speech or expression); *United States v. Osinger*, 753 F.3d 939, 944 (9th Cir. 2014) (endorsing the Eighth Circuit approach in finding that § 2261A(2)(B) does not violate the First Amendment); *United States v. Sayer*, 748 F.3d 425 (1st Cir. 2014) (upholding § 2261(A)(2)(A) and noting that the term "substantial emotional distress" is understood in context and should not be interpreted in isolation to the rest of the statute); *United States v. Shrader*, 675 F.3d 300, 310 (4th Cir. 2012) (Section 2261A(2)(B) provides fair notice and "a common sense reading of the statute adequately defines the prohibited conduct"); *Petrovic*, 701 F.3d 849 (8th Cir. 2012) (finding the statute was not facially unconstitutional); *see also United States v. Bandy*, No.17-CR-3402MV, 2021 WL 876980, at *3-6 (D.N.M. Mar. 9, 2021) (holding §2261A(2)(B) was not constitutionally overbroad or vague); *United States v. Moreland*, 207 F. Supp. 3d 1222, 1229

(N.D. Okla. 2016) (holding that the overbreadth doctrine did not apply to § 2261A(2)(B)). Indeed, Thornton fails to cite any other relevant law to support his argument that § 2261(A)(2) is unconstitutionally vague and makes no effort to analyze or distinguish this case from the cases listed above that have all upheld the constitutionality of the statute. This Court should reject Thornton's first claim outright.

II. *The superseding indictment plainly sets forth the course of conduct.*

In three simple sentences, Thornton alleges this Court should dismiss the superseding indictment because the cyberstalking count fails to allege what Thornton's alleged "course of conduct" is. Doc. 61 at 4-5. This claim is wholly without merit.

The indictment for any given charge "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED.R.CRIM.P. 7(c)(1). An indictment satisfies this standard "if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997) (citation omitted). "An indictment that sets forth the words of the statute generally is sufficient so long as the statute itself adequately states the elements of the offense." *United States v. Darrell*, 828 F.2d 644, 647 (10th Cir. 1987). Here, that standard is clearly satisfied.

> Count 1 of the superseding indictment states:
>
> Between on or about February 4, 2021, and May 23, 2021, in Doña Ana County, in the District of New Mexico and elsewhere, the defendant, John Benjamin Thornton, with the intent to harass and intimidate T.T., used facilities of interstate and foreign commerce, including electronic cellular telephone networks and an interactive computer service, to engage in a course of conduct, *to wit, the sending of text messages and posting messages on Facebook*, that caused, attempted to cause, and would be reasonably expected to cause, substantial emotional distress to T.T., a former spouse of the defendant.

Doc. 43. (emphasis added). This language closely tracks the statutory language of 18 U.S.C.

§ 2261A(2)(B). Moreover, the indictment contains a specific time frame—between on or about February 4, 2021, and May 23, 2021—and alerts Thornton to exactly the means by which he is alleged to have engaged in a course of conduct: by "the sending of text messages and posting messages on Facebook." Doc. 43.

The United States has turned over in discovery a phone dump of Thornton's text messages, as well as a record's return containing Thornton's Facebook posts. Accordingly, Thornton is on fair notice that he is charged with engaging in a course of conduct—which means "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose"[4]—involving text messages and Facebook posts between February 4, 2021, and May 23, 2021. *United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008) ("[W]here the indictment quotes the language of a statute and includes the date, place, and nature of illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges." (quotations and citation omitted)).

Accordingly, because Count 1 of the superseding indictment properly alleges that Thornton committed each of the essential elements of the crime charged, it is legally sufficient. This Court should reject Thornton's second argument for dismissal outright.

*III. The superseding indictment clearly describes Thornton's § 875(c) offenses.*

Thornton's final attempt to dismiss the indictment relates to the threats in interstate commerce counts, in violation of 18 U.S.C. § 875(c). Doc. 61 at 5-6. Thornton claims that the superseding indictment is deficient "for failing to allege that he had intended to threaten anyone." *Id.* at 5. This argument appears to be premised on the holding in *Elonis v. United States*, 135 S.

---

[4] 18 U.S.C. § 2266(2).

Ct. 2001 (2015). *See id*. However, because the indictment comports with the *mens rea* standard announced in *Elonis*, it is legally sufficient.

In *Elonis v. United States*, 135 S. Ct. 2001 (2015), the Supreme Court considered the requisite *mens rea* the government is required to prove in an § 875(c) prosecution. In the case below, the jury had been instructed that they should access the threat based on whether a reasonable person reviewing the post would consider it to be a threat. *Id*. at 2011. This type of standard allows for a conviction based on simply proving the defendant was negligent. *Id*. The Supreme Court vacated the conviction, and held that the government must prove more than negligence to sustain an § 875(c) conviction. *Id*. at 2013.

Here, the indictment, *inter alia*, alleges that Thornton "*knowingly and willfully* transmitted in interstate and foreign commerce communications containing threats to injure the person of another . . . ." Doc. 43 (emphasis added). Thus, the appropriate *mens rea* scienter is included. In *United States v. Howard*, 947 F.3d 936, 942 (6th Cir. 2020), the defendant attempted to make the same argument about an § 875(c) indictment that Thornton alleges here. In *Howard*, the defendant was charged with a violation of § 875(c), and the indictment alleged that the defendant "knowingly and willfully" transmitted the threat in interstate commerce. *Id*. at 942. There, just like here, the defendant argued that the indictment lacked sufficiency because it failed to allege the defendant "'intended to threaten or knew the [communication] would be interpreted as threatening.'" *Id*. (citation omitted). The Sixth Circuit ultimately rejected this argument concluding that:

> [A] reasonable reader could conclude that [the defendant] "willfully and knowingly" transmitted the voicemail "for the purpose of issuing a threat, or with knowledge that the [voicemail] [would] be viewed as a threat." *Elonis*, 135 S. Ct. at 2013. This reasonable reading is entirely in compliance with the Supreme Court's directive in *Elonis*. *See id*.

*Howard*, 947 F.3d at 944.

The Court should follow the rationale of the Sixth Circuit in *Howard* and deny Thornton's request to dismiss the indictment.

*IV. A hearing on this motion is unnecessary.*

This Court can, and should, deny Thornton's motion without a hearing. "An indictment returned by a legally constituted and unbiased grand jury. . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363-64 (1956). The Court should not consider outside evidence when evaluating the sufficiency of an indictment. *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). The superseding indictment against Thornton adequately expresses the elements of the offense, and Thornton's arguments for dismissal are meritless. The Court should deny the motion on the merits without a hearing.

## CONCLUSION

For the reasons outlined herein, the Court should deny Thornton's motion to dismiss in its entirety without a hearing.

Respectfully submitted,

FRED J. FEDERICI
Acting United States Attorney

*/s/ Filed Electronically on 10/20/2021*
MARISA A. ONG
JONI AUTRY STAHL
Assistant United States Attorney
200 N. Church St.
Las Cruces, NM 88011
Phone: (575) 522-2304
Fax: (575) 522-2391

I HEREBY CERTIFY that I have electronically filed the foregoing with the Clerk of the Court using the CM/EMF system which will send notification to opposing counsel of record on this date.

***/s/   Filed Electronically on 10/20/2021***
Marisa A. Ong
Assistant United States Attorney