IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Criminal Case 21-cr-0878-KG |
| ) | |
| **JOHN BENJAMIN THORNTON**, ) | |
| ) | |
| Defendant. ) | |

## UNITED STATES' SENTENCING MEMORANDUM AND REQUEST FOR UPWARD VARIANCE

"You're FUCKING DEAD."

"I'm going to execute you for treason."

"I'm going to kill all of you."

"I'll slit his throat and throw his body off the roof top."

"I hope you die slow but it will be messy and quick."

I'm going to "blow HER FUCKING HEAD OFF!!"

These are the defendant's—John Benjamin Thornton—words to the victims in this case. Threats he made to his ex-wife, his own father, and threats made to a stranger and his company's employees—people Thornton has never even met. This case is about how one man's anger and obsession drove him to engage in a campaign of harassment, intimidation, and threats of violence. And because of these actions, the lives of his victims have been forever changed.

Because of the egregiousness of Thornton's conduct, as well as the long lasting effects his offenses have had on his victims, the United States is requesting the statutory maximum sentence of 60 months, or 5 years.[1] As will be explained in more detail below, an upward

---

[1] Thornton's total offense level is 20, his criminal history category is I, and his guidelines range

1

variance is warranted based on the seriousness of Thornton's crimes, and in order to ensure that the victims in the case—and the public—are shielded from future crimes by Thornton.

## BACKGROUND

On November 10, 2021, the grand jury returned a second superseding indictment against Thornton.  Count 1 charged Thornton with cyberstalking his former spouse, in violation of 18 U.S.C. § 2261(A)(2), and the remaining eight counts charge Thornton with making threats in interstate commerce, in violation of 18 U.S.C. § 875(c).  Doc. 43.  The charges stem from Thornton's troubling conduct aimed at three primary individuals: his ex-wife, T.T., his father, R.T., and the co-founder and chief scientist of a company called D-Wave Systems Inc., E.L, as well as D-Waves employees.

    I.    *Conduct Aimed at T.T.*

Thornton and T.T. were married from approximately 2007 until 2012.  According to T.T., the divorce was amicable, as was her contact with Thornton following the divorce.  Indeed, Thornton and T.T. have three young children together.  However, in 2016 things began to change and Thornton became more absent and began exhibiting erratic and concerning behavior to T.T.

In 2021, Thornton began posting troubling messages on the social media website Facebook about T.T., and also began sending her disturbing text messages.  Specifically, between February 4, 2021, and May 23, 2021, Thornton made posts on Facebook alleging he was going to "beat the fucking shit out of [T.T.]," he was going to "give her a beating in front of [his] kids in Katy, Texas," he was going to "ACTUALLY earn a domestic violence conviction on the day [he] blast [T.T.] with a STRAIGHT RIGHT," and, he was going to "blow HER FUCKING HEAD OFF!!"  Between February 4, 2021, and May 23, 2021, Thornton also posted

---

is 33-41 months.  PSR ¶ 114.

on Facebook, *inter alia*, that T.T. is a "drug whore," that she "should put a gun in her mouth and pull the trigger," that she is a "JUNKIE BITCH," that she is "a heroin addict," that she "is responsible for 2 heroin deaths in her family." Additionally, on May 18, 2021, Thornton sent T.T. a text saying he was going to "execute" her and that she should be "scared." This conduct, *inter alia*, formed the basis of the cyberstalking crime Thornton was charged with in Count 1 of the second superseding indictment.

Thornton was also charged in separate counts with threatening to injure and kill T.T. The charges stem from Facebook messages posted on February 4, 2021, (Count 2), April 3, 2021 (Count 4), and May 23, 2021 (Count 9). In the post from February 4, 2021, Thornton references allegations that he beat up his ex-girlfriend, M.K., that he went to jail for that conduct. Thornton also states he is going to give T.T. a "beating in front of [his] kids." Thornton continues, "It'll be the FIRST conviction, I've ever had." Thornton also states, as if he was speaking to his children, "Your mother is the first woman I've ever hit…" *Id*.

In the post from April 3, 2021, Thornton, *inter alia*, states, "You'd think after the 4th time I had my charges completely dismissed, my ex-wife would stop peddling lies, but nope." *Id*. Later, Thornton goes on to say, "I will ACTUALLY earn a domestic violence conviction the day I blast [T.T.] face with a STRAIGHT RIGHT!" Finally, in a post from May 23, 2021, Thornton states he is going to "blow [T.T.'s] FUCKING HEAD OFF!!" and also says he "don't care if it's [his] children's mother." *Id*.

II.     *Conduct Aimed at R.T.*

R.T. is Thornton's father. According to R.T., beginning in 2018 or 2019, Thornton appeared to become upset with R.T., as well as the world. R.T. made attempts to reach out to Thornton, but he would not respond. Their relationship then slowly deteriorated. On May 18,

2021, Thornton sent R.T. a text message saying he was going to kill R.T. Specifically, Thornton told R.T. he was "going to execute you for Treason…," he was going to "kill you for standing in my way," he stated that R.T. was "so stupid," he proclaimed "You're FUCKING DEAD [R.T.]," and told R.T. to "Love your last days…". R.T. took these threats very seriously and reached out to the local police department where he lives regarding the threats. Thornton was charged with threatening to kill R.T. (Count 8).

      III.      Conduct Aimed at E.L. and D-Wave Employees

Thornton is obsessed with a company called D-Wave, a quantum computing company who is dedicated to developing innovative technology to solve complex problems. Thornton believes that D-Wave is an evil corporation and took it upon himself to engage in a campaign of harassment and threaten extreme violence against E.L. and the company.

On February 16, 2021, (Count 3), Thornton posted on Facebook that D-Wave is "a Terrorist organization," that "WE GET TO KILL THEM," and then stated, "G.R.?[2] I'll slit his throat and throw his body off of D-WAVES roof top." Thornton went on to say, "I'm coming to get [E.L.] . . . I'll do it with a box cutter just to send a message to George Bush that he's next, once it starts. Dialing 911 won't protect any of them from me." Thornton finished with, "I will execute thousands and the people of the world WILL CHEER IT!" Then on April 10, 2021, (Count 5), Thornton posted a selfie along with the following message: "I AM GOING TO KILL [E.L.] with THIS GOLDEN GUN."

On May 12, 2021, Count 6), Thornton reached out directly to D-Wave by e-mail stating, "Yes! I'm going to kill all of you. [E.L.] is getting his throat slit for me."

---

[2] G.R. is one of the founding members of D-Wave.

Thornton was charged with threatening to kill and injure E.L. as well as D-Wave employees.

On December 3, 2021—three days before trial—Thornton pled guilty without a plea agreement to all counts in the indictment.

## ARGUMENT

Because the guidelines are advisory[3] and only one factor to be considered by the Court in determining a sentence under 18 U.S.C § 3553(a), the United States will frame its request within the applicable factors set forth in 18 U.S.C § 3553(a).

**18 U.S.C § 3553(a)(1):  The Nature and Circumstances of the Offense and the History and Characteristics of Defendant**

The nature and circumstances of the offense are serious.  Thornton's persistently posted and sent messages containing threats to seriously injure and/or kill his victims.  The content of the threats escalated over time.  His victims absolutely took the threats seriously, and their lives have been forever altered by Thornton's conduct.  Indeed, a review of paragraphs 23 through 42—along with E.L.'s Victim Impact Statement—details how much Thornton's victims have been affected by his crimes.

What is especially troubling is that even after Thornton was arrested and detained in the instant case, he continued to threaten E.L.  Specifically, in a letter dated October 30, 2021,

---

[3] "Although the Sentencing Guidelines are now only advisory, they still "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States,* 552 U.S. 38, 49 (2007); *see generally United States v. Booker,* 543 U.S. 220, 246–58 (2005) (striking down the mandatory guidelines regime on Sixth Amendment grounds, not on grounds of disagreement with the policies animating the guidelines regime).

addressed to R.T., Thornton proclaimed, "I will kill E.L.!"[4]  This should illustrate to the Court that Thornton is a serious risk for continuing to engage in criminal behavior.

Moreover, a review of Thornton's history and characteristics reveal that his criminal history computation of I significantly underscores the amount of run ins with law enforcement he has had, along with the multiple allegations of domestic abuse perpetrated by Thornton.  *See* PSR ¶ 87-93.  Thus, taking into account Thornton's history, it is clear an upward variance in the case is warranted.

In light of these considerations and Thornton's conduct, the nature and circumstances of the offense and the history and characteristics of Thornton clearly weigh in favor of imposing a sentence of 60 months.

### A)  18 USC § 3553(a)(2)(a):  To Reflect the Seriousness of the Offense, Promote Respect for the Law, and to Provide Just Punishment

In terms of promoting respect for the law, a sentence of 5 years would not offend the community at large, based upon the facts of this case.  Indeed, there have been a variety of cases where Defendants convicted of similar conduct received lengthy sentences.  In *United States v. Pinson*, the Tenth Circuit reviewed the district court's imposition of a 135–month upward variance for a defendant "with a propensity for making grandiose threats," that was convicted of one count of threatening to harm the President of United States, one count of willfully making a materially false, fictitious, and fraudulent statement to a United States Marshal, and one count of mailing threatening communications.  *United States v. Pinson*, 542 F.3d 822, 826 (10th Cir. 2008).  The Tenth Circuit affirmed the sentence.  *Id*. at 839.  Indeed, as long as the district court gives a thorough explanation for the sentence, the Tenth Circuit has again and again affirmed the

---

[4] This letter is attached to the pleading as Sentencing Exhibit 1 (Sent. Ex. 1).

imposition of an upward variance. *E.g., United States v. Pena*, 963 F.3d 1016, 1029 (10th Cir. 2020) (affirming imposition of 262-month upward variance for defendant convicted of carjacking and 924c offenses when district court adequately explained its reasoning); *United States v. Cade*, 766 F. App'x 686, 687 (10th Cir. Apr. 2, 2019) (unpublished) (affirming 32-month upward variance for defendant convicted of being a felon in possession of a firearm when the district court found, *inter alia*, such sentence was warranted in order to protect the public from future crimes); *United States v. Lawless*, 979 F.3d 849, 852 (10th Cir. 2020) (affirming 84-month upward variance for defendant convicted of arson where no one was injured based on the district court's finding that, inter alia, the planning of the crime and potential for harm warranted a higher sentence); *United States v. Yarclay*, 861 F. App'x 246, 250 (10th Cir. Jul. 7, 2021) (unpublished) (affirming 21-month upward variance for defendant convicted of bank fraud when district court found that, inter alia, defendant's "overall conduct demonstrated instability and violent propensities," thus warranting an upward variance.); *United States v. Naramor*, 726 F.3d 1160, 1169 (10th Cir. 2013) (affirming upward variance to statutory maximum of five years for defendant convicted of mailing a threatening communication to a state judge when district court found that, inter alia, defendant posed a danger to the public).

Accordingly, here, the Court may rest assured that an upward variance would be in line with "promoting respect for the law" under the circumstances of this case.

### B) 18 USC § 3553(a)(2)(b):  To Afford Adequate Deterrence to Criminal Conduct

The criminal conduct at issue is cyberstalking and multiple threats of disturbing violence. While I'm sure Thornton will argue he had no intention of carrying out his threats, it is clear that his victims took his words seriously.  As a result of Thornton's conduct, they have experienced stress and ongoing fear that they will be harmed.  Indeed, the need to deter Thornton from

additional criminal conduct in this case is compelling because he refuses to refrain from stalking his victims. Even after being charged and detained, Thornton continued to make threats to kill E.L. and he continues to send letters to R.T. Accordingly, a sentence of 60 months will send a message to Thornton that his actions have consequences, and he cannot continue to engage in interstate harassment of individuals.

### C) 18 USC § 3553(a)(2)(C): To Protect the Public from Further Crimes of Defendant

Here, there is a serious need to protect the public from further crimes of Thornton. His actions make clear anyone is susceptible to his criminal behavior. Thornton has targeted those that he is close to, as well as complete strangers. Indeed, though Thornton was never charged for this conduct, he also has made mention of executing the President of the United States. In order to ensure that the public is protected from Thornton, a sentence of 60 months is necessary.

### CONCLUSION

For the reasons stated above, the United States requests that the Court impose a guidelines sentence in this case of 60 months.

Respectfully submitted,

FRED J. FEDERICI
United States Attorney

*Electronically Filed 4/1/2022*
MARISA A. ONG
JONI A. STAHL
Assistant United States Attorneys
200 N. Church St.
Las Cruces, NM 88001
(575) 522-2304 – Tel.

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record.

/s/
MARISA A. ONG
Assistant United States Attorney